UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **LARRY KELLY** | **CIVIL ACTION NO. 3:13-cv-2518** |
| **LA. DOC #536188** | |
| **VS.** | **SECTION P** |
| | **JUDGE DONALD E. WALTER** |
| **JACKSON PARISH CORRECTIONAL** | |
| **CENTER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Larry Kelly filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 16, 2013. His application to proceed in forma pauperis was granted on December 2, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the River Bend Detention Center (RBDC), however he complains that he was assaulted by another inmate, and thereafter denied prompt medical care and wrongly incarcerated in a lock down cell while he was a prisoner at the Jackson Parish Corrections Center (JPCC). He sued JPCC, the LaSalle Management Company, and various corrections officials at JPCC. He seeks compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff filed his original complaint in the United States District Court for the Eastern District of Louisiana on June 6, 2013. In due course his complaint was transferred to this Court. In his original complaint he alleged that on November 8, 2012, while he was imprisoned at the

JPCC,  he was assaulted by inmates who were armed with make-shift knives.  Help was summoned and the assailants fled as the corrections officers approached. Plaintiff was able to grab an identification card from one of his assailants and both he and that assailant were placed in lock down. Plaintiff claimed that he was bleeding but received no medical treatment despite his requests.  He claimed that as a result of the assault and the delay in receiving medical treatment, he now has permanent scars and a fractured cheek bone. He also complained that he was wrongly punished and then placed back in jeopardy when he was returned to his dormitory. [Doc. 1]

On November 26, 2013, plaintiff submitted an amended complaint.  Therein he alleged that on October 15, 2012, he was removed from "D" Dorm and placed in administrative segregation for unknown reasons by Lt. Swearington. On October 25, 2012, he was returned to the dormitory without a hearing. On November 1, 2012, plaintiff was again removed from the dormitory by Lt. Swearington and returned to administrative segregation.

Swearington suspected that plaintiff was receiving contraband from a corrections officer; plaintiff denied the charges and on September 3, 2012, he filed a grievance charging Swearington with harassment.  According to plaintiff, Swearington spread the rumor amongst the inmate population that plaintiff was a "snitch" or informant.  On November 6, 2012, plaintiff requested that he be returned to his dormitory and on November 8 he was placed in "C" Dorm.

On that same date, at 12:05 p.m.,  plaintiff was assaulted by inmate Raheem Robinson and others in "C" Dorm. Help was summoned by another inmate and plaintiff was discovered bleeding and holding the hands of his assailant. According to plaintiff, the security cameras revealed that plaintiff was the victim of an assault by Robinson; nevertheless, plaintiff was

2

charged with a disciplinary rules infraction and placed in Administrative Segregation.  On the following day, November 9, at 10:45 a.m., plaintiff was transported to a nearby hospital where he was treated for lacerations and a fractured cheek bone. The treating physician prescribed a week's regimen of pain medication and plaintiff was returned to "D" Dorm without a disciplinary hearing.  On the same day plaintiff submitted a grievance and requested a Section 1983 complaint form. On December 1, 2012, plaintiff asked the warden to respond to his grievances and when he got no response he re-submitted the two grievances on December 19, 2012. On January 7, 2013, Corrections Officer Nash responded to plaintiff's grievances and advised him that he should exhaust administrative remedies before filing the Section 1983 complaint.  On January 9, 2013, plaintiff was transferred to RBDC, his present place of confinement.

Plaintiff claimed that the defendants , including Sheriff Anthony Brown, all had knowledge of "weapons and violence in the jail and failed to take corrective measures." He claimed that "Lt. Swearington was aware of the substantial risk of harm to plaintiff" and had "actual knowledge of impending harm."  He claimed that "Sgt. Griggs acted in an objectively unreasonable manner and [the] occurrence was with a warning, another inmate feared for plaintiff's safey and called for help."

Plaintiff thereafter identified the following defendants: (1) Sgt. Griggs; (2) Lt. Swearington; (3) Capt. Barnie Nash; (4) Asst. Warden Billy Tigner; (5) Warden Timothy Ducote; and (6) Sheriff Anthony Brown.  He prayed for compensatory damages of $10 million and an unspecified amount of punitive damages and unspecified injunctive relief.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Failure to Protect*

Plaintiff's right to protection from inmate violence is governed by the Eighth Amendment's prohibition of cruel and unusual punishment and is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable for failing to protect an inmate unless the official "knows of and disregards an excessive

4

risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  In order to prevail plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835.

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).  In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton:  "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 <u>American and English Encyclopedia of Law</u> 2-4 (2d ed. 905) (footnotes omitted)."

Nothing in plaintiff's complaint suggests that the defendants were guilty of deliberate indifference with regard to the complained of altercation between plaintiff and his fellow inmates. Nothing suggests that these defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.  In any event, even assuming that the defendants were aware of such facts, nothing suggests that they actually drew such an inference.

5

Additionally, in considering whether defendants have failed to protect an inmate, Courts must look to whether there was a "substantial" or "pervasive" risk of harm preceding the assault. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident. *See e.g. Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot).  Here, other than conclusive allegations,  plaintiff alleged no facts to suggest that the attack on him was at all foreseeable. Inmates are unlikely to recover under Section 1983  for injuries sustained in isolated assaults unless they can prove that the authorities either "set him up" for the assault or deliberately ignored his repeated and clearly well-founded claims of danger. Plaintiff implies that Lt. Swearington claimed plaintiff was a "snitch"; however, he offers no factual support for this claim either. The facts alleged do not demonstrate that the defendants inferred that plaintiff was at risk of an event such as the one complained of. Further, it does not appear that the attack was a foreseeable consequence of any violations of prison policy.  Therefore, plaintiff's failure to protect claim fails to state a claim for which relief may be granted.

### 3. Medical Care

Plaintiff also complains that he was denied prompt and adequate medical care for the injuries he sustained in the altercation.  The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is also based upon the Eighth Amendment's prohibition of cruel and unusual punishment. As noted above, rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm.  Mere negligence or a failure to act

reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Furthermore, as previously noted, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it.  In other words, a civil rights  plaintiff must allege and prove that each of the  defendants knew of and then disregarded an <u>excessive risk </u>of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed</u>, <u>and that they drew that </u>inference. *Id.* at 837.

Here plaintiff does not allege that he was denied appropriate medical care; instead, he complains that medical care for his lacerations and fractured cheek bone was delayed for a period of less than 24 hours. A delay in providing medical care can violate the Eighth Amendment but only if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*,

7

467 F.3d 459, 463 (5th Cir. 2006).  Other than the complaint that he now has permanent scars, he has not identified any "serious harm" that befell him as a result of the defendants' failure to immediately provide medical care.  He does not, however, allege facts to establish that the scarring would have been less had he obtained prompt medical treatment. Again, he fails to state a claim for which relief may be granted.

**4. Due Process**

Plaintiff implies that his due process rights were violated by the defendants when they confined him to lock down and administrative segregation even though he was not convicted of a prison disciplinary rules violation.  By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  Plaintiff's claim, taken as true for the purposes of this Report, fails to state a claim for which relief might be granted pursuant to 42 U.S.C. §1983 because  "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  While the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated

8

prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). Therein the court stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ...  do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's claims regarding his overnight restraint, his transfers and his overnight confinement in lock down are not "atypical" and thus his complaint fails to state a claim for which relief might be granted.

### 5. Access to Courts

Finally, plaintiff implies that his right of access to the Courts was violated.   "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977);  *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions

or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821;  *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Plaintiff's pleadings have not demonstrated that his ability to prepare and transmit necessary legal documents to the court has been curtailed.

In addition, in order for him to state a claim that he was denied his constitutional right of access to the courts, he must also "demonstrate[ ] that his position as a litigant was <u>prejudiced</u> by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This  requirement that a claimant show "<u>actual injury</u>"  is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading.  He implied that he was not immediately provided a copy of the form for filing Section 1983 complaints; however, that delay is of no moment. Plaintiff has successfully filed his complaint, his application for in forma pauperis status, and an amended complaint.

Plaintiff has not been denied access to the courts either with regard to the litigation of this or any other *pro se* civil rights complaint. Plaintiff's access to courts claim is frivolous

### Conclusion and Recommendation

Therefore,

10

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, December 17, 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE